UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL ANN McBRATNIE,

    Plaintiff,

v.

DENIS McDONOUGH,

    Defendant.
_____/

Case No. 2:20-cv-12952
District Judge Bernard A. Friedman
Magistrate Judge Kimberly G. Altman

# REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 45)[1]

## I.     Introduction

This is an employment discrimination case. Plaintiff Carol Ann McBratnie (McBratnie), proceeding *pro se*, is suing defendant Denis McDonough, the United States Secretary of Veterans Affairs (VA), for disability discrimination stemming from the VA's decision to terminate the credentialing process when McBratnie refused to sign a pre-employment Declaration of Health form (Declaration). *See* ECF No. 1. Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned. (ECF No. 10).

---

[1] Upon review of the parties' papers, the undersigned deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

Before the Court is the VA's motion for summary judgment. (ECF No. 45). The motion is fully briefed. (ECF Nos. 53, 57, 60). For the reasons set forth below, it is RECOMMENDED that the motion be GRANTED and the case be DISMISSED.

## II. Background

### A. Overview

In or around February 2014, McBratnie sought employment as a nurse practitioner with CR Associates (CRA), a private company that had contracted to staff a VA outpatient clinic in Bridgeport, Texas. (ECF No. 1, PageID.29-31).[2] Because the position involved treating VA patients, any candidate that CRA intended to hire needed to be referred to the VA for a medical credentialing process. (*Id.*, PageID.31). To be credentialed by the VA, a candidate had to submit numerous documents, including the Declaration and a scope of practice form. (*Id.*). McBratnie submitted some of the requested materials but did not submit either the Declaration or the scope of practice form. (*Id.*). Because she declined to complete and submit these two forms, her credentialing process was terminated on March 26, 2014. (*Id.*). McBratnie then filed a complaint with the

---

[2] McBratnie submitted exhibits with her complaint, however, the exhibits were not separately docketed. The majority of the facts comprising this subsection of this Report and Recommendation are summarized from the Office of Federal Operations' decision. The decision can be found at ECF No. 1, PageID.29-34.

2

Equal Employment Opportunity Commission (EEOC), alleging that the VA discriminated against her based on disability when it terminated the credentialing process. (*Id.*, PageID.30).

After losing at the EEOC stage, McBratnie filed the instant lawsuit, alleging that the VA violated the Americans with Disabilities Act (ADA) and the Rehabilitation Act by requiring completion of the Declaration as part of the credentialing process. (*Id.*, PageID.1-13). McBratnie "asserts that [the Declaration] was a cleverly designed form to acquire and use prohibited information in the application process so as to exclude a class of individuals from being considered for open positions." (*Id.*, PageID.14).

### B.     Declaration of Health

McBratnie testified at her deposition that she believed an employer could not ask about an individual's disability status or require them to obtain a physical until after the employer had extended a job offer to the individual. (McBratnie Deposition, ECF No. 45-3, PageID.1599). Accordingly, McBratnie told her CRA contacts that she was unwilling to complete the Declaration before such an offer was made. (*Id.*). McBratnie was told that the VA required an applicant to submit the Declaration before it would make a "committed offer." (*Id.*). McBratnie did not want to submit the Declaration before receiving an offer to ensure that she "wasn't excluded from the candidate pool because [she is] disabled." (*Id.*).

3

She further testified that during the EEOC discovery process she learned that CRA submitted four candidates to the VA for credentialing even though there was only one nurse practitioner position available. (ECF No. 45-3, PageID.1596). The VA was then supposed to tell CRA who to hire. (*Id.*, PageID.1596-1597).

The Declaration is reproduced in full below.

> Case 2:20-cv-12952-BAF-KGA ECF No. 45-4, PageID.1632 Filed 09/06/22 Page 1 of 1
>
> **DECLARATION OF HEALTH**
>
> I, _____, hereby declare that, to the best of my knowledge, do not have a physical or mental health condition that would adversely affect my ability to carry out the clinical privileges which I have requested from VA North Texas Health Care System.
>
> _____  _____
> SIGNATURE OF APPLICANT    DATE
>
> ********************************************************************
> Do Not Fill In This Section
>
> **CONFIRMATION OF APPLICANT'S DECLARATION**
>
> I concur with the declaration of health presented by _____
>                                                              (Applicant)
>
> _____  _____
> PHYSICIAN SIGNATURE        DATE
>
> _____
> PHYSICIAN NAME (PRINT)
>
> _____  _____
> NAME OF PHYSICIAN'S PRACTICE    PHONE NUMBER
>
> ********************************************************************
>
> **SERVICE CHIEF ACCEPTANCE**
> (If not the physician confirming applicant's declaration above)
>
> _____  _____
> SERVICE CHIEF SIGNATURE    DATE
>
> _____
> SERVICE CHIEF NAME (PRINT)
>
> VA North Texas Health Care System        Revised 8/29/13
>
> 000010

4

III.     Motion for Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that McBratnie is *pro se* does not reduce her obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient

5

treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

IV. Discussion

A. Parties' Arguments

The question in this case is whether the VA violated either the ADA or the Rehabilitation Act when it terminated McBratnie's credentialing process after she refused to complete and submit the Declaration.

The VA argues that requiring an applicant like McBratnie to sign the Declaration is permissible under 42 U.S.C. § 12112 because § 12112(d)(2)(B) provides that an employer "may make preemployment inquiries into the ability of an applicant to perform job-related functions." The VA further argues that requiring the Declaration to be countersigned by a physician "did not constitute a medical examination. And even if it did, the VA would have been permitted to require a job-specific medical examination because the VA was under the reasonable impression that CRA had extended McBratnie a conditional offer of employment." (ECF No. 45, PageID.1579).

6

McBratnie argues that purpose of the Declaration was to disqualify applicants with disabilities from positions with the VA in violation of the ADA. She also argues that she was in the pre-offer stage of employment with the VA regardless of whether CRA had made her "a conditional offer." (ECF No. 53, PageID.1674).

### B. Overview

Under the ADA, employers are prohibited from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). However, when plaintiffs "bring a claim under § 12112(d), [they] are not required to allege that they suffer from a disability as defined by the ADA or that they were discriminated against because of a disability." *Garlitz v. Alpena Reg'l Med. Ctr.*, 834 F. Supp. 2d 668, 677 (E.D. Mich. 2011); *see also Lee v. City of Columbus, Ohio*, 636 F.3d 245, 252 (6th Cir. 2011) ("A plaintiff need not prove that he or she has a disability in order to contest an allegedly improper medical inquiry under 42 U.S.C. § 12112(d).").

"[T]he ADA prohibits an employer from requiring an applicant to undergo a 'preemployment' medical examination, unless it is focused on 'the ability of the applicant to perform job-related functions.'" *Id.* at 675 (quoting 42 U.S.C. §

12112(d)(2)). However, if certain conditions are met, an employer can require an applicant to undergo "a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant[.]" 42 U.S.C. § 12112(d)(3).

Similarly, "[t]he Rehabilitation Act, a parallel statute of the ADA, prohibits the United States Postal Service, federal agencies, and other programs receiving federal funding from discriminating against any qualified individual with a disability." *Bent-Crumbley v. Brennan*, 799 F. App'x 342, 344 (6th Cir. 2020) (citing 29 U.S.C. § 794(a)). The Rehabilitation Act "specifically incorporates the standards applied under the ADA to determine violations, 29 U.S.C. § 794(d), and courts look to guidance under the ADA to determine if a federal employee has been discriminated against because of a disability[.]" *Id*. at 344-345 (citing *Mahon v. Crowell*, 295 F.3d 585, 588-589 (6th Cir. 2002)).

The parties dispute whether McBratnie was in the pre- or post-offer stage, so the legality of the Declaration will be considered as to both stages.

### C. Pre-Offer Stage

#### 1. Requiring McBratnie to Sign the Declaration

The first issue is whether requiring McBratnie to sign the Declaration was permissible if it is assumed, as McBratnie contends, that she was in the pre-offer stage during the credentialing process.

8

"Although inquiry as to the ability of a pre-offer applicant or an employee to perform job-related functions is allowed under the ADA, such inquiry is not without limits." *Farmiloe v. Ford Motor Co.*, 277 F. Supp. 2d 778, 782 (N.D. Ohio 2002). "[T]he ADA limits an employer's ability to request unfounded examination to prevent 'the unwanted exposure of the employee's disability and the stigma it may carry.'" *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 812 (6th Cir. 1999) (quoting *EEOC v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1094 n. 8 (6th Cir. 1998)). "The employer may not request 'wide-ranging assessments of mental or physical debilitation that could conceivably affect the quality of an employee's job performance.'" *Farmiloe*, 277 F. Supp. 2d at 782 (quoting *Sullivan*, 197 F.3d at 812).

Additionally, relevant "regulations clarify that while it is appropriate for an employer to inquire into an applicant's ability to perform job-related functions, it is illegal for him to make targeted disability-related inquiries." *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1215 (11th Cir. 2010) (citing 29 C.F.R. § 1630.13); *see also EEOC v. Grisham Farm Prods., Inc.*, 191 F. Supp. 3d 994, 997 (W.D. Mo. 2016) (holding that the defendant violated § 12112(d) because it required all job applicants "to complete a pre-offer health history form, which inquired into whether the applicant suffered from twenty-seven (27) different types of health conditions—including everything from allergies to epilepsy to breast

9

disorder to heart murmur to sexually transmitted diseases to depression to varicose veins and beyond"). Furthermore,

> [t]he EEOC's enforcement guidance for the statute explains that medical inquiries that are likely to elicit answers relating to disabilities are prohibited, and a blanket query seeking disclosure of any and all medical conditions runs afoul of this prohibition: "Certainly, an employer may not ask a broad question about impairments that is likely to elicit information about disability, such as 'What impairments do you have?' "

*EEOC v. Celadon Trucking Servs., Inc.*, No. 1:12–cv–00275, 2015 WL 3961180, at *6 (S.D. Ind. June 30, 2015) (quoting EEOC, *ADA Enforcement Guidance: Preemployment Disability–Related Questions and Medical Examinations* ("EEOC Enforcement Guidance") (EEOC Notice 915–002) (Oct. 10, 1995) at 8).

Ultimately, a pre-offer inquiry is permissible so long as it is goes to the essential functions of the job. Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). "Technical skills and experience are not the only essential requirements of a job." *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 674-675 (1st Cir. 1995) (collecting cases).

Here, the Declaration asked McBratnie to sign off on a statement that "to the best of [her] knowledge, [she] do[es] not have a physical or mental health condition that would adversely affect [her] ability to carry out the clinical privileges which [she] ha[d] requested from the VA North Texas Health Care

10

System." (ECF No. 45-4, PageID.1632).

> The term "clinical privileging" is defined as the process by which a practitioner, licensed for independent practice (i.e., without supervision, direction, required sponsor, preceptor, mandatory collaboration, etc.), is permitted by law and the facility to practice independently, to provide specified medical or other patient care services within the scope of the individual's license, based on the individual's clinical competence as determined by peer references, professional experience, health status, education, training, and licensure.

(Veterans Health Administration Handbook, ECF No. 57-1, PageID.2090).

In other words, the Declaration asked McBratnie to verify that she was mentally and physically capable of providing medical and other patient care services to VA patients seeking the services of a nurse practitioner. The ability to carry out clinical privileges goes to the heart of the essential requirements of a nurse practitioner. If an individual has a physical or mental condition that would adversely affect her ability to carry out these clinical privileges, then it would be fair to say that she is unable to fulfill the essential requirements of the position. Thus, the Declaration was an acceptable inquiry targeted to ensure the individual selected for the nurse practitioner position could perform her "job-related functions." 42 U.S.C. § 12112(d)(2)(B). As such, requiring McBratnie to sign the Declaration was not illegal under either the ADA or Rehabilitation Act as a matter of law. The issue of whether requiring a physician to countersign the Declaration was legally permissible will be considered next.

11

2. Requiring a Physician Countersignature

Given the finding above that requiring McBratnie to sign the Declaration did not violate § 12112(d) or the Rehabilitation Act, the VA is entitled to summary judgment if its requirement that the Declaration be countersigned by a physician is determined to be a medical inquiry rather than medical examination. This is because medical examinations are forbidden at the pre-offer stage but inquiries are not. 42 U.S.C. § 12112(d)(2).

The VA relies on *Grenier, supra*, where "the First Circuit affirmed summary judgment in favor of the employer, holding that the employer's pre-offer request of a medical certification from a physician did not violate the ADA." *Farmiloe*, 277 F. Supp. 2d at 784 (citing *Grenier*, 70 F.3d at 674). The First Circuit reasoned "that a certification from a treating psychiatrist that does not necessitate new tests or procedures is best analyzed as an 'inquiry' rather than as a 'medical examination.' " *Grenier*, 70 F.3d at 676. An employer can request such a certification "so long as the inquiry does not otherwise run afoul of § 12112(d)(2)(A)." *Id*.

Similarly, in *Harris v. Harris & Hart, Inc.*, 206 F.3d 838 (9th Cir. 2000), "the Ninth Circuit affirmed summary judgment in favor of the employer, holding that the employer's request that [the plaintiff], a former employee with a known disability, provide a medical release from a physician was appropriate." *Farmiloe*,

277 F. Supp. 2d at 784 (citing *Harris*, 206 F.3d at 840). There, the Ninth Circuit upheld the district court's determination that the "medical release" that the defendant required the plaintiff to submit was an "inquiry" rather than an "examination" because it was "more akin to a progress report from a specialist treating a particular injury, than a comprehensive evaluation from a general practitioner testing a worker for physical or mental impairments." *Harris*, 206 F.3d at 843.

The key similarity between the medical inquiries at issue in both *Grenier* and *Harris* was that they "were limited in scope." *Farmiloe*, 277 F. Supp. 2d at 784. Indeed, "[t]he employers in these cases only required a letter from a physician stating that the job applicant had the ability to perform the essential job functions." *Id*. This type of inquiry differs from those that are "unlimited in scope" like a request for an applicant's full medical records. *See id*.

Here, the requirement that the Declaration be countersigned by a physician is analogous to the medical inquiries at issue in *Grenier* and *Harris*. To reiterate, the Declaration asked McBratnie to sign off on a statement that "to the best of [her] knowledge, [she] do[es] not have a physical or mental health condition that would adversely affect [her] ability to carry out the clinical privileges which [she] ha[d] requested from the VA North Texas Health Care System." (ECF No. 45-4, PageID.1632). After signing, McBratnie then needed to obtain the signature of a

13

physician who agreed with this statement regarding her ability to carry out her clinical privileges. There was no requirement that the signing physician examine McBratnie or perform any specific testing. Therefore, like the medical inquiries at issue in *Grenier* and *Harris*, the Declaration does not run afoul of either the ADA or Rehabilitation Act because it was directed solely at verifying whether McBratnie could perform job-related functions.

In sum, requiring McBratnie to sign and have a physician countersign the Declaration did not constitute a violation of § 12112(d)(2) as a matter of law.

### D. Post-Offer Stage: Requiring a Medical Examination

The VA alternatively argues that even if the Declaration amounted to a medical examination, it would nonetheless be permissible "because the VA was under the reasonable impression that CRA had extended McBratnie a conditional offer of employment." (ECF No. 45, PageID.1579). In other words, the VA says that McBrantie could be considered to be at the post-offer stage where requiring a medical examination is permissible. Because the undersigned has concluded that the Declaration was an acceptable pre-offer inquiry into McBratnie's ability to perform job-related functions under § 12112(d)(2), it is not necessary to address this argument. However, it will be considered for the sake of completeness.

To support its contention that McBratnie was in the post-officer stage, the VA relies upon an email exchange between McBratnie and Colleen Martinez

(Martinez) as well as statements from Louann Freeny (Freeny) and Sandra Nickerson (Nickerson). Nickerson was a credentialing specialist with the VA and Freeny was an administrator with CRA. (ECF No. 39-3, PageID.384). Martinez was a senior recruiter for CRA. (*Id*., PageID.647-648).

Freeny explained that CRA contacts the VA to begin the "extensive background and credentialing process" after "CRA decides that they are going to go with an individual." (*Id*., PageID.385-386). She further explained that the credentialing process has to be "done prior to a job offer by the VA." (*Id*., PageID.386, 418). Similarly, Nickerson testified at a deposition that she contacted McBratnie to begin the credentialing process after CRA decided "they wanted her." (*Id*., PageID.410). She further explained that McBratnie was "offered the position upon credentialing," meaning that she would get the position if she satisfactorily completed the credentialing process. (*Id*.). Additionally, McBratnie mentioned in an email to Martinez that she had been given a start date of March 30, though that date kept "moving into the future." (*Id*., PageID.647).

The VA argues that based on the foregoing evidence, "it was under the reasonable impression that CRA had extended McBratnie a conditional offer[,]" and that once a conditional offer had been extended, the VA could require McBratnie to undergo a medical examination under 42 U.S.C. § 12112(d)(3). The VA's argument misses the mark.

The term " '[o]ffer' is strictly construed in this context—the offer must be 'real.' " *Garlitz*, 834 F. Supp. 2d at 675 (quoting *O'Neal v. City of New Albany*, 293 F.3d 998, 1008 (7th Cir. 2002)). "For purposes of § 12112(d)(3), a job offer is real if the employer has evaluated all relevant non-medical information that it reasonably could have obtained and analyzed prior to giving the offer." *O'Neal*, 293 F.3d at 1008 (internal quotation marks and citations omitted). Ultimately, "the burden is on the employer to demonstrate that it took reasonable steps to obtain and evaluate all non-medical information before making an offer conditioned on the successful completion of a post-offer examination." *Garlitz*, 834 F. Supp. 2d at 676.

Here, McBratnie was directed to complete the VA credentialing process after interviewing with CRA. The credentialing process required McBratnie to submit approximately a dozen documents to the VA. (ECF No. 1, PageID.31). The record shows that the VA would only consider McBratnie's application once she had completed the credentialing process, meaning that the VA still needed to consider nearly a dozen documents in addition to the Declaration before McBratnie could be evaluated. If any of these documents had not met the VA's standards, McBratnie would not have been hired.

As the Ninth Circuit has explained, offers are not real when they are "contingent not just on the [individuals] successfully completing the medical

16

component of the hiring process but also on the completion of a critical *non-medical* component: undergoing background checks, including employment verification and criminal history checks." *Leonel v. Am. Airlines*, 400 F.3d 702, 709 (9th Cir. 2005). Accordingly, the VA has failed to meet its burden to "demonstrate that it took reasonable steps to obtain and evaluate non-medical information before making the offer pursuant to § 12112(d)(3)[,]" and thus that McBratnie had a "real" offer of employment which would permit the VA to require her to undergo a medical examination. *Garlitz*, 834 F. Supp. 2d at 677. Thus, the VA is not entitled to summary judgment based on this argument.

### E. Summary

The Declaration is the type of medical inquiry that an employer can make of applicants before extending an offer of an employment. Neither the requirement that McBratnie sign the Declaration nor the requirement that a physician countersign the Declaration violates the ADA or Rehabilitation Act. Thus, the VA is entitled to summary judgment.

### V. Conclusion

For the reasons set forth above, the undersigned RECOMMENDS that the VA's motion for summary judgment, (ECF No. 45), be GRANTED and the case be DISMISSED.

Dated: April 24, 2023                  s/Kimberly G. Altman
Detroit, Michigan                    KIMBERLY G. ALTMAN
                                                       United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 24, 2023.

s/Carolyn Ciesla  
CAROLYN CIESLA  
Case Manager
